UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PCL CONSTRUCTION SERVICES, INC., a Colorado corporation, | ) ) ) | CIV. 11-4035-KES |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| B&H CONTRACTORS OF SOUTH DAKOTA, INC., a South Dakota corporation, | ) ) ) ) | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| Defendant and Third-Party Plaintiff, | ) ) ) ) | |
| vs. | ) ) | |
| GEORGE FISCHER, INC.; GEORGE FISCHER SLOANE, INC.; CENTRAL STATES INDUSTRIAL SUPPLY, INC.; and CPI SALES, INC., collectively d/b/a Central States Group, | ) ) ) ) ) ) ) ) | |
| Third-Party Defendants. | ) | |
| B&H CONTRACTORS OF SOUTH DAKOTA, INC., a South Dakota corporation, | ) ) ) ) | Civ. 10-4076 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| GEORGE FISCHER, INC.; GEORGE FISCHER SLOANE, INC.; CENTRAL STATES INDUSTRIAL SUPPLY, INC.; and CPI SALES, INC., collectively d/b/a Central States Group, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Plaintiff, PCL Construction Services, Inc., moves the court for summary judgment on its claims for breach of contract and negligence against defendant and third-party plaintiff, B&H Contractors of South Dakota, Inc. PCL argues that the evidence on the record proves its claims as a matter of law, or alternatively, the indemnification provision found in the contract between the parties makes B&H liable for all damages PCL has suffered with respect to its claims. B&H opposes the motion. For the following reasons, PCL's motion is denied.

## BACKGROUND

PCL is a Colorado corporation and serves as a contractor for construction projects. B&H is a South Dakota corporation and does plumbing installation work.

PCL was hired by 3M Company to serve as the general contractor for a construction project that took place at 3M's manufacturing plant in Brookings, South Dakota. PCL then entered into a subcontract with B&H that required B&H to install the plumbing and piping for the project.

The subcontract required B&H to "provide and furnish all labor, materials, tools, supplies, equipment, services, facilities, supervision and administration necessary for the proper and complete" installation of the piping system. Docket 67-1 at 2. The subcontract also required B&H to perform its work in a "skillful and workmanlike manner, with material and equipment being of the kind and grade necessary for the purpose intended." Docket 67-1 at 5. An indemnification provision was included in the subcontract, which read as follows:

2

> [B&H] shall defend, indemnify, and hold harmless [PCL], Owner, Architect, Engineer, their sureties, consultants, and all persons indemnified by [PCL] pursuant to the Prime Contract, and all parents, subsidiaries, affiliates, agents and employees of any of them (the "Indemnitees") from and against any and all claims, liabilities, liens, costs, damages, citations, penalties, fines, attorneys' fees, losses, and expenses of whatever nature (the "Indemnified Claim") arising out of or resulting from [B&H's] performance of or failure to perform the Subcontract Work or [B&H's] obligations under the Subcontract . . . regardless of whether or not the indemnified Claim is caused in part by one or more Indemnitees, but only to the extent caused in whole or in part by breach of the Subcontract or by negligent or otherwise wrongful acts or omissions of [B&H], [B&H's] sub-subcontractors, suppliers, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable. Such obligation . . . shall survive the completion of the Project and final payment to [B&H].

Docket 82-7 at 2.

B&H ordered and installed PPro Seal piping materials that were manufactured by George Fischer, Inc. and supplied by Central States Industrial Supply, Inc. (the "GF product"). Before installing the GF product, B&H's lead installer received over-the-phone training from George Fischer personnel. After receiving the instructions, B&H began installing the GF product. PCL was present during the installation process. There were at least a dozen leaks that occurred throughout the installation process. Upon completion of the installation work, the piping system was inspected and air tested. PCL participated in and monitored both the inspection and testing of the system. The piping system passed the air test, indicating 100 percent joint integrity.

Leaks began to form following B&H's completion of the installation. The first leak that formed in a completed portion of the piping system occurred in October of 2007, while B&H was still working on a different section of the system. B&H repaired this leak. B&H completed the entire installation in February of 2008. A second leak was found in September of 2008. B&H again repaired the leak, and B&H's insurance carrier paid for most of the damage caused by the leak. A third leak was discovered in March of 2010. PCL notified B&H of the leak and demanded that B&H repair the leak and pay for any damage caused by the leak. B&H refused to repair the leak or reimburse PCL for any costs incurred for repairing the leak or for damage caused to the 3M facility.

Because of these leaks, 3M informed PCL that it wanted an entirely new piping system installed to avoid any future problems. PCL demanded that B&H replace the piping system. In the meantime, a fourth leak was discovered in January of 2011. PCL then contracted with Redlinger Bros. Plumbing and Heating to remove and replace the entire piping system. A fifth leak was discovered during the demolition process that took place in preparation for Redlinger's installation.

PCL incurred costs totaling $171,445.50 to repair the five leaks, reimburse 3M for damage caused to its property, and replace the entire piping system. PCL now seeks damages from B&H and is alleging claims for breach of contract and negligence.

## STANDARD OF REVIEW

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of her case on which she bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment is precluded if there is a dispute in facts that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

Because this is a diversity action, the court applies the law of the state in which it sits. *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). Thus, South Dakota law applies to PCL's claims. Under South Dakota law, "[a] contract is to be interpreted according to the law and usage of the place where

it is to be performed[.]" SDCL 53-1-4. The contract here was performed in South Dakota, meaning that South Dakota law governs PCL's breach of contract claim. The parties do not dispute that South Dakota law applies to the contract claim.

Separately, "South Dakota employs the most significant relationship test when determining choice of law questions" involving tort claims. *Burhenn v. Dennis Supply Co.*, 685 N.W.2d 778, 784 (S.D. 2004). Under the most significant relationship test, the court assumes and the parties do not dispute that South Dakota law applies to PCL's negligence claim.

## ANALYSIS

PCL argues that summary judgment should be granted on its claims for breach of contract and negligence because B&H's defective installation work caused the pipes to leak or, alternatively, because B&H must fully indemnify PCL for the costs incurred to fix and replace the pipes under the terms of their contract.

### I.  Cause of the Leaky Pipes

PCL argues that B&H breached its contract with PCL when B&H negligently installed the piping system. Furthermore, PCL asserts that it did not contribute in any manner to cause the leaks in the pipes. Therefore, PCL argues that it is entitled to summary judgment on its claims for breach of contract and negligence.

To prevail on its breach of contract claim, PCL must establish (1) an enforceable promise, (2) breach of the promise, and (3) resulting damages. *Weitzel v. Sioux Valley Heart Partners*, 714 N.W.2d 884, 894 (S.D. 2006). To prevail on its

negligence claim, PCL must establish that (1) B&H owed PCL a duty, (2) the duty was breached, and (3) PCL suffered injuries as a result of B&H's breach of its duty. *Bordeaux v. Shannon Cnty. Sch.*, 707 N.W.2d 123, 127 (S.D. 2005). Summary judgment is generally not feasible in negligence cases. *Casillas v. Schubauer*, 714 N.W.2d 84, 88 (S.D. 2006).

PCL alleges that B&H breached its contract because it failed to "provide and furnish all labor and materials and supervision necessary for the proper installation of the piping system" and because it failed to "perform its work in a skillful and workmanlike manner, with material and equipment being of the kind and grade necessary for the purpose intended." Docket 66 at 9-10 (internal quotations omitted). Similarly, PCL alleges that these aforementioned failures form the basis for its negligence claim.

Whether for purposes of PCL's breach of contract theory or its negligence theory, the relevant issues here are who and what caused the leaks in the piping system. If B&H can demonstrate that a genuine issue of material fact exists on these issues, then summary judgment cannot be granted in PCL's favor on either of its claims.

B&H has submitted an expert report from Dr. McKeighan, a manager in the mechanical engineering practice at Exponent, Inc., a scientific and engineering consulting firm dedicated primarily to the analysis and prevention of failures. Docket 69-3 at 2. In his report, Dr. McKeighan asserts that "the most notable workmanship issues were not associated with the leak. This observation appears

7

counter to the notion that leakage and workmanship are directly linked." *Id.* at 7. He goes on to state that "no document or report produced in this matter present or reference any normative standard of care that suggests the B&H workmanship is not within the range of expected installer variation." *Id.* He notes that "the [George Fischer] Reports . . . suggest[ ] that the type of workmanship observed herein is not uncommon." *Id.*

Dr. McKeighan further notes that identifying the cause of the leakage "requires an extensive scientific-based examination of the role of manufacturing, installation, and operational variables on the performance and integrity of the pipe fusion process" and that no such examination has taken place. *Id.* "No evidence has been produced to date that definitively links any . . . workmanship issues to pipe joint failure rates or premature joint failure." *Id.* at 8. Moreover, Dr. McKeighan opines that the fact that the pipe system passed a leak test indicating 100 percent joint integrity goes against any argument that B&H's workmanship was the cause of the failure. *Id.* He summarily opines that the "root cause of joint leakage (and hence failure) is indeterminate. The mere observation of non-optimum installation methods is not sufficient to identify it as the sole, root cause of failure." *Id.* at 9.

Furthermore, there has been evidence introduced that suggests that the GF product was defective for the purpose for which it was used. Dr. McKeighan asserts that the product was defective because it is overly sensitive to installation variables, and such defect was "exacerbated by improper installation

8

instructions[.]" Docket 80 at 2. If the product was defective, then it seems that B&H's workmanship may not have been the cause of the leaks and PCL's resulting damages.

PCL argues that even if the product was the cause of the leaks, B&H is liable because it chose the GF product. But there is a dispute as to whether B&H chose the GF product or if PCL actually chose the GF product. Paul Cohrs, B&H's job superintendent for the project, claims that PCL specified that the GF product was to be used for the project. Docket 81 at 2. Thus, there exists a genuine issue of material fact on the issue of who chose to use the GF product.

In summary, there exists questions of fact on the issues of who and what caused the leaks in the pipes. Because there are questions of fact on these issues, the court cannot find, as a matter of law, that B&H is liable to PCL under either PCL's breach of contract claim or its negligence claim.

## II.  Indemnification

Alternatively, PCL argues that summary judgment should be granted in its favor because of the indemnification provision found in the contract. The indemnification provision reads as follows:

> [B&H] shall defend, indemnify, and hold harmless [PCL], Owner, Architect, Engineer, their sureties, consultants, and all persons indemnified by [PCL] pursuant to the Prime Contract, and all parents, subsidiaries, affiliates, agents and employees of any of them (the "Indemnitees") from and against any and all claims, liabilities, liens, costs, damages, citations, penalties, fines, attorneys' fees, losses, and expenses of whatever nature (the "Indemnified Claim") arising out of or resulting from [B&H's] performance of or failure to perform the Subcontract Work or [B&H's] obligations under the

9

> Subcontract . . . regardless of whether or not the indemnified Claim is caused in part by one or more Indemnitees, but only to the extent caused in whole or in part by breach of the Subcontract or by negligent or otherwise wrongful acts or omissions of [B&H], [B&H's] sub-subcontractors, suppliers, anyone directly or indirectly employed by them, or anyone for whose acts they may be liable. Such obligation . . . shall survive the completion of the Project and final payment to [B&H].

Docket 82-7 at 2.

Indemnification provisions are allowed in contracts under South Dakota law. "Where the subcontractor expressly agrees to indemnify the contractor for all damages, he is bound by the terms of his contract." *Schull Constr. Co. v. Koenig*, 121 N.W.2d 559, 562 (1963). But "[c]ontracts of indemnity are strictly construed in favor of a subcontractor as against the contractor[.]" *Id.* "An indemnity contract is to be construed according to the clear and unequivocal expression of the parties' intent embodied in the ordinary meaning of the words used." *Becker v. Black & Veatch Consulting Eng'rs*, 509 F.2d 42, 46 (8th Cir. 1974) (citing South Dakota law).

It is unnecessary to thoroughly analyze the language of the indemnification provision at this time because both parties agree that there needs to be a determination as to who and what was the cause of the leaks before the indemnity provision can take effect. Docket 78 at 16 ("The factual question of causation is a prerequisite to determining whether this indemnity provision applies in this case."); Docket 89 at 12 ("The only question that this Court needs to decide is whether B&H or its suppliers played any role in causing the leaks and

10

damage."). Undoubtedly, the issues of who and what caused the leaks are factual determinations. Such determinations are left to the fact finder and are inappropriately made at the summary judgment stage if the material facts are in dispute. As discussed in the prior section, there are disputes regarding the material facts. Because there are disputed material facts, the court cannot find B&H liable to PCL as a matter of law. Thus, PCL's motion for summary judgment is denied.

## CONCLUSION

B&H has demonstrated on the record the existence of specific facts that create a genuine issue for trial on PCL's claims for breach of contract and negligence. These same disputed facts preclude the court, at this time, from applying the indemnification provision found in the contract between the parties. Accordingly, it is

> ORDERED that PCL's motion for summary judgment (Docket 64) is denied.
>
> Dated May 2, 2013.
>
> > BY THE COURT:
> >
> > /s/ *Karen E. Schreier*
> > KAREN E. SCHREIER
> > UNITED STATES DISTRICT JUDGE